IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STANLEY BOCLAIR, #A-60451, )
)
        Plaintiff, )
)
vs. ) Case No. 10–cv–978–MJR–SCW
)
ILLINOIS DEPARTMENT OF )
CORRECTIONS, et al., )
)
        Defendants.

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his claims as to Defendants Tina Beardan Monroe[1] and Darrell Westerman, but has failed to exhaust his remedies as to Defendants Donald Hulick, Dan Liefer, Tom Maue, and Bradley Sadler, that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment (Docs. 44 & 45), and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Factual Findings

This matter stems from a three count Complaint filed by Plaintiff on December 3, 2010 (Doc. 1). Plaintiff's Complaint alleged counts of Retaliation (Count 1), failure to protect (Count 2), and

---

[1] Hereinafter referred to as Defendant Beardan.

excessive force (Count 3). Only his Count for Retaliation survived the Court's § 1915 review. Specifically, Plaintiff alleges in Count 1 that he was retaliated against by numerous Defendants (*See* Doc. 10). He alleges that Defendants Saddler and Westerman retaliated against him for filing grievances by threatening him. Further, he alleges that Defendants Beardan, Leifer, and Maue moved Plaintiff to a new cell with an inmate Denton who later attacked Plaintiff. Plaintiff also alleges that Defendant Hulick retaliated against him by moving Plaintiff to another institution, and that several unknown defendants moved an inmate who had previously threatened Plaintiff to a cell three cells down from Plaintiff (*Id.*).[2]

In response to Plaintiff's Complaint, Defendants have filed a motion for summary judgment arguing that Plaintiff has not exhausted his administrative remedies as to Defendants Hulick, Saddler, Leifer, and Maue (Docs. 44 & 45).[3] Specifically, as to Plaintiff's claim that Saddler and Westerman retaliated against Plaintiff by threatening him with harm, Plaintiff filed a grievance on February 11, 2008, which was received by the ARB on August 15, 2008, that alleges that Defendant Westerman was hostile towards Plaintiff and that he verbally threatened Plaintiff for filing an emergency grievance on February 10, 2008 (Doc. 45 Ex. A at ¶ 8; Ex. B; Doc. 1 Ex. 5). This grievance was fully exhaust through the institutional level and the ARB, and received a final determination by the ARB on August 25, 2008 (Doc. 45 Ex. A at ¶ 8; Ex. B).[4] As to Defendant Saddler, Plaintiff filed an emergency

---

[2] The Court notes that the claims against unknown Defendants was recently dismissed by the Court for want of prosecution due to Plaintiff's failure to properly identify the John Doe Defendants (Doc. 51). While Defendants initially raised this claim in their motion for summary judgment as one that was not properly exhausted, the Court finds that this claim is no longer a part of this case and thus no longer needs to be considered as part of this summary judgment motion.

[3] Defendants concede that Plaintiff has exhausted his administrative remedies as to Defendant Westerman for allegedly threatening him for filing grievances and as to Defendant Beardan for allegedly transferring Plaintiff to a cell with inmate Denton in retaliation.

[4] A further grievance was filed on February 10, 2008 and received by the ARB on August 15, 2008 which involved an incident with Defendants Westerman and Bearden, and another inmate (Doc. 45 Ex. A at ¶ 9). While this grievance was also properly exhausted, Defendants point out that

grievance on October 29, 2007 alleging that Defendant Saddler had threatened him after Plaintiff had reported an assault of an inmate (Doc. 1 Ex. 1). This grievance was returned to Plaintiff who then submitted the grievance to his counselor (*Id.*). However, Defendants allege that Plaintiff failed to pursue this grievance further through the institutional level (Doc. 1 at ¶¶ 23-24). Plaintiff states in his affidavit, that he spoke with his counselor about the emergency grievance sometime between November 11 and 17, 2008 and that she informed him that he did not have to worry about the problem as Defendant Saddler was leaving and he "don't have to do this" as she pointed to the grievance (Doc. 49 Ex. B at p.5). He also states that he met with Internal Affairs Officer Mr. Thomas, who told him to stop filing "crap" grievances (Doc. 49 Ex. 1 at pp. 3-4). Plaintiff admits that he did not file the grievance after speaking with his counselor (*Id.* at p.5).

Plaintiff's Complaint also alleges that Defendants Beardan, Liefer, and Maue transferred Plaintiff to a cell with Inmate Denton. An affidavit from Gina Allen, an ARB Chairperson, indicates that one grievance is on file with the ARB regarding Plaintiff's cell transfer (Doc. 45 Ex. A at ¶10). The grievance was dated July 18, 2008 and was received by the ARB on October 16, 2008 (*Id.*). The grievance alleged that Defendant Beardan was responsible for moving Plaintiff to the cell with Inmate Denton, who later assaulted Plaintiff (Doc. 45 Ex. D; Doc. 1 Ex. 6). The grievance also indicates that Defendant Beardan orchestrated the assault on Plaintiff by Denton. The grievance was fully exhausted and received a final determination by the ARB on November 24, 2008 (Doc. 1 Ex. 6D).

Plaintiff's Complaint also alleges that Defendant Hulick retaliated against Plaintiff by transferring Plaintiff to Pontiac Correctional Center. Gina Allen's affidavit indicates that one grievance, dated January 21, 2007, was received by the ARB regarding Plaintiff's request to be transferred to

---

the claims in those grievances have nothing to do with the current claims in this case, but rather appear to be the alleged catalyst for Defendant Westerman's threats on February 11, 2008. Plaintiff does not argue that this grievance constitutes an exhaustion of his administrative remedies.

another institution, which had been denied (Doc. 45 Ex. A at ¶7). The grievance was received on February 1, 2007 by the ARB, but was returned to Plaintiff because his grievance had not been addressed at the institutional level (*Id.*). However, Plaintiff stated in his Response that the grievance is not relevant to the claims against Hulick and instead relates to work assignment issue he had more than twenty-one (21) months before the incidents alleged in his Complaint (Doc. 49-1 at p. 9 (h)).

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issues presented are solely legal questions.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the

time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

### A. Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill.**

**Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g)**.

**B.      Defendants Saddler and Westerman**

Plaintiff's Complaint alleges that both Defendants Saddler and Westerman, on separate occasions, threatened Plaintiff for writing grievances against staff at Menard. Defendants concede that Plaintiff has exhausted his remedies against Westerman by fully exhausting a grievance dated February 11, 2008 which was reviewed through the entire institutional process and then appealed to the ARB. However, Defendants argue that Plaintiff has not exhausted his remedies as to Defendant Saddler because he did not further exhaust an emergency grievance dated October 29, 2007 after it was determined not to be an emergency and returned to him.

Plaintiff admits that he did not further pursue his emergency grievance regarding Defendant Saddler after receiving it back from the warden and having it determined not to be an emergency. However, Plaintiff argues that he did not further pursue the grievance because he was informed by his counselor not to pursue the grievance and because internal affairs had investigated the matter and instructed Plaintiff "not to write crap (grievances) in again on staff" (Doc. 49 Ex. B; Doc.

49-1 at p.5). Plaintiff argues that he did as he was instructed by his counselor and did not file his grievance with his counselor. He basically alleges that he was prevented from filing his grievance any further after receiving it back from the warden. The administrative remedy process can be made unavailable to an inmate "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** *See also Dale v. Lappin*, **376 F.3d 652, 656 (7th Cir. 2004) (prison guards refusal to provide prisoner with grievance forms made administrative remedies unavailable to prisoner)**. However, while Plaintiff has stated in his affidavit that his counselor suggested he not file his grievance because the matter was being taken care of and the Internal Affairs officer suggested that Plaintiff not file frivolous grievances, there is no evidence that prison officials made the administrative process unavailable to Plaintiff or prevented him from filing his grievance.[5] This is not like the situation in *Dole*, where the plaintiff filed a grievance that was mishandled or lost by the guards; here Plaintiff did not file his grievance, instead choosing not to pursue his grievance any further after receiving it back from its emergency review. Plaintiff has failed to present any evidence that there was any affirmative misconduct on the part of prison officials; instead, Plaintiff merely indicates that his counselor told him he didn't have to worry about the problem because Saddler was leaving the unit and he did not have to pursue his grievance further. However, neither his counselor nor any other prison official affirmatively prevented Plaintiff from pursuing his grievance. Nor is there any indication that prison officials informed Plaintiff that he had done all that was necessary to comply with the grievance process. *Pavey v. Conley*, **663 F.3d 899, 906 (7th Cir. 2011) (Administrative remedy can be deemed**

---

[5] Plaintiff makes much of the fact that an Internal Affairs investigation was conducted after he filed his emergency grievance. However, the Seventh Circuit has recently noted that an internal affairs investigation is not a substitute for the grievance process as an internal affairs investigation is not concerned with providing relief to a prisoner. *Pavey v. Conley*, **663F.3d 899, 905 (7th Cir. 2011).**

unavailable **"if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it.").**[6] Thus, the undersigned **FINDS** that Plaintiff has not exhausted his remedies as to Defendant Saddler as the administrative process was still available to Plaintiff. Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** summary judgment as to Defendant Saddler.

**C.      Defendants Maue, Beardan, and Liefer**

As to Defendants Maue, Beardan, and Liefer, Plaintiff's Complaint alleges that Defendants Beardan, Leifer, and Maue moved Plaintiff into a cell with inmate Denton, who later assaulted Plaintiff, in retaliation for filing grievances. Defendant Beardan concedes that Plaintiff has exhausted his remedies against Beardan by filing an emergency grievance dated July 18, 2008 which was returned to Plaintiff as a non-emergency and then was properly submitted through the institutional levels and the ARB with a final determination from that ARB dated November 24, 2008. Defendants further argue, however, that the grievance does not mention Defendants Leifer and Maue nor was a further grievance filed regarding Leifer's and Maue's alleged involvement in Plaintiff's cell placement. Plaintiff contends that he had no way of knowing the personnel in charge of moving Plaintiff into a cell with Defendant Denton, but did mention Leifer and Maue by their ranks in his grievance as being the officers in charge of the determination to move Plaintiff.

However, a review of the grievance filed on July 18, 2008 reveals that neither Leifer nor Maue were listed. Only Defendant Beardan was alleged to be involved in the decision to move Plaintiff into a cell with inmate Denton. Plaintiff's grievance specifically alleges that Defendant Beardan

---

[6] In *Pavey*, the plaintiff tried to argue that he did not proceed further with the grievance because prison officials had informed him that he had done all that was necessary to comply with the grievance process. However, the Seventh Circuit ultimately found that the evidence did not support his assertion that prison officials had "given [him] the wrong idea" about the grievance process. *Id*. **at 906.**

conducted the cell move of Plaintiff and requests that Defendant Beardan be held responsible for the assault on Plaintiff. There is no evidence to indicate that Plaintiff was grieving against Defendant Leifer or Maue. Plaintiff maintains that he properly exhausted his remedies against Defendants Leifer and Maue because he referred to them as the Major and Lieutenant. The grievance procedure for inmates housed in the Illinois Department of Corrections does allow inmates to file grievances against individuals whose names are not known but the inmate is required to "include as much descriptive information about the individual as possible." **20 Ill. Admin. Code 504.810(b)**. Plaintiff's original grievance, however, does not even list a Major or Lieutenant. The titles of such officers are labeled in a "Appendant" to his grievance which was attached to his Complaint,[7] but that document merely states that several officers including a Lieutenant, a Unit Major, and various other officers did not take the initiative to move Denton, but the Appendant does not state that those officers were responsible for the cell assignment nor that anyone, other than Defendant Beardan, were responsible for Plaintiff's placement. The purpose of the grievance procedure is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington,* **418 F.3d 714, 719 (7th Cir. 2005).** Without any indication in the grievance that Plaintiff was complaining that Liefer and Maue, or even a Unit Major and Lieutenant, were responsible for Plaintiff's placement in inmate Denton's cell, the institution had no ability to take corrective action as they were only aware of Plaintiff's issues with Defendant Beardan.[8] Thus, there is

---

[7] The Court notes that although Plaintiff includes the Appendant in his Exhibits along with the July grievance, there is no indication that it was actually filed at the time the grievance was filed nor do any of the officers at the institutional level or ARB refer to the attached Appendant. However, for purposes of this motion, the Court will assume that the Appendant was filed along with the July 18, 2008 grievance.

[8] This matter appears to be distinguishable from the recent case, *Maddox v. Love*, **655 F.3d 709 (7th Cir. 2011),** where the Seventh Circuit found that the inmate had exhausted his administrative remedies, even though he had not named or described any of the individuals in his

no evidence that Plaintiff properly exhausted his remedies against Defendants Liefer and Maue and, accordingly, the undersigned **RECOMMENDS** that the Court find that Liefer and Maue are entitled to summary judgment.

**D.     Defendant Hulick**

Defendant Hulick argues that he is also entitled to summary judgment because Plaintiff failed to file any grievance alleging that he transferred Plaintiff out of Menard in retaliation for Plaintiff filing grievances. The only grievance on file with the ARB in relation to a transfer of Plaintiff is dated January 21, 2007 and deals with the denial of a request to be transferred by Plaintiff. The grievance was received by the ARB on February 1, 2007 and returned to Plaintiff because it had not been addressed at the institutional level. Defendants note that this grievance does not have anything to do with the allegations in Plaintiff's Complaint as it deals with a request for transfer that was denied, while Plaintiff's Complaint alleges that Hulick transferred Plaintiff out of Menard in retaliation. Defendants argue that as there are no other grievances on file relating to Plaintiff's claim, Defendant Hulick is entitled to summary judgment.

In Plaintiff's Response, he agrees that the January 21, 2007 grievance is irrelevant to the allegations in his Complaint because it deals with a work assignment issue that occurred some twenty-one (21) months before the allegations in his Complaint. However, Plaintiff has failed to offer any

---

grievance, because the prison had not rejected the grievance on procedural grounds but ruled on the merits, and the grievance dealt with an administrative decision which the Court found highly unlikely that the prison would be unaware of who was in charge of that decision. Here, while Plaintiff's grievance was decided on the merits, Plaintiff specifically listed Defendant Beardan as the one responsible for his move. While all of the responses at the institutional level indicated that cell placement was not in the purview of Defendant Beardan's responsibilities as an officer, there is no indication or evidence that Liefer and Maue were responsible for cell placement as part of their duties or that the prison would have been on notice that they were involved in the placement of Plaintiff in this case without some description from Plaintiff in his grievance. Thus this does not appear to be a situation where the prison would know that Liefer and Maue were involved in Plaintiff's cell placement by just the type of administrative decision Plaintiff was grieving.

evidence or point to any other grievance that shows he exhausted his claims that Hulick retaliated against him by transferring him out of Menard. Instead, Plaintiff merely states that Hulick had knowledge as to why Plaintiff was moved and that after Plaintiff was assaulted by inmate Denton, Hulick had Plaintiff transferred. Plaintiff never points to any grievance or even dispute the facts raised by Defendants that he did not file a grievance on Hulick regarding his transfer. Thus, there is no evidence that Plaintiff exhausted his administrative remedies as to Defendant Hulick and the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to Defendant Hulick.

### IV.  Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Docs. 44 & 45), finding that Plaintiff exhausted his administrative remedies as to Defendants Tina Beardan Monroe and Darrell Westerman, while failing to exhaust his claims as to Defendants Donald Hulick, Dan Liefer, Tom Maue, and Bradley Sadler. Should this Report and Recommendation be adopted in its entirety, only the retaliation claims against Defendants Tina Beardan Monroe and Darrell Westerman will remain.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: January 24, 2012

                                            */s/ Stephen C. Williams*
                                            STEPHEN C. WILLIAMS
                                            United States Magistrate Judge