IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STANLEY BOCLAIR, )
)
          Plaintiff, )
)
vs. ) Case No. 10-cv-0978-MJR-SCW
)
DONALD HULICK, )
TINA BEARDAN MONROE, )
BRADLEY SADLER, )
TOM MAUE, )
DARRELL WESTERMAN, )
and DAN LIEFER, )
)
          Defendants. )

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### A.    Introduction and Procedural Overview

In this prisoner civil rights suit filed under 42 U.S.C. 1983, Stanley Boclair alleges deprivations of his federally-secured constitutional rights while incarcerated at Menard Correctional Center, in the custody of the Illinois Department of Corrections. On threshold review of Boclair's complaint under 28 U.S.C. 1915A, the undersigned Judge dismissed several claims and Defendants, ordered service to be made on the remaining Defendants, and referred pretrial matters to the Honorable Stephen C. Williams, United States Magistrate Judge, pursuant to Local Rule 72.1(a).

Subsequent pleadings and Orders clarified and narrowed the case to retaliation claims against six Defendants: (1) Donald Hulick, (2) Tina Beardan Monroe, (3) Bradley Sadler, (4) Tom Maue, (5) Darrell Westerman, and (6) Dan Liefer. On September 23, 2011, these six Defendants moved for summary judgment based on

Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. 1997e(a).

On January 24, 2012, Judge Williams submitted a Report and Recommendation (Doc. 52, "the Report") recommending that the undersigned District Judge grant in part and deny in part Defendants' summary judgment motion.[1] Specifically, the Report recommended that the Court grant the motion as to Defendants Hulick, Sadler, Maue and Liefer. The Report further recommended that the Court deny the motion (find that Plaintiff *did* exhaust his claims) as to Defendants Tina Beardan Monroe and Darrell Westerman.[2]

The Report was sent to the parties with a notice plainly advising them that they must file any objections by February 10, 2012 (Doc. 52-1). Defendants did not object to the Report. On February 14, 2012, the Court received Plaintiff Boclair's objections to the Report. They had a February 5, 2012 certificate of service and arrived in an envelope with a February 7, 2012 postmark. Applying the mailbox rule, the Court construed the objections as timely-filed and set a March 2, 2012 deadline by which Defendants could respond thereto. Defendants did so (Doc. 59).

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Boclair specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); Southern Dist. Illinois Local Rule 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge

---

[1] Judge Williams determined that there were no factual disputes as to exhaustion, and therefore a *Pavey* hearing was not necessary to resolve the solely legal questions relating to exhaustion in this case.

[2] The Report refers to Tina Beardan Monroe as Beardan. She is referred to as Monroe in parts of this Order.

Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.*

   B.   <u>Analysis</u>

   ►   <u>Overview of Exhaustion Requirement</u>

The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), requires prisoners to exhaust administrative remedies before they file suit in federal court.  **42 U.S.C. 1997e(a).** The exhaustion requirement applies to all lawsuits challenging prison conditions under 42 U.S.C. 1983 and actions under any other federal law brought by a prisoner confined in any jail or correctional facility.  **See Porter v. Nussle, 534 U.S. 516, 532 (2002)(United States Supreme Court held that PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust while his lawsuit is pending.  **See Perez v. Wisconsin Department of Corr., 182 F.3d 532, 535 (7th Cir. 1999); Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002).**  If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit or dismiss any claims not fully exhausted.  **See Jones v. Bock, 549 U.S. 199, 223 (2007); Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005).**

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." **Kaba v. Stepp, 458 F.3d 678, 680 (7th Cir. 2006).**  So here, Defendants bear the burden of demonstrating that Boclair failed to exhaust all available

administrative remedies before he filed this suit. **Kaba**, 458 F.3d at 681, *citing Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

To properly exhaust within the meaning of the PLRA, the inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." **Pozo v. McCaughtry,** 286 F.3d 1022, 1025 (7th Cir. 2002). As an inmate confined in the Illinois Department of Corrections ("IDOC"), Boclair was obligated to follow the regulations contained in the IDOC's grievance procedures.

The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Illinois Administrative Code Section 504.800, *et seq.* (West 2008). At *step one*, the inmate presents his complaint to a correctional counselor. If that fails to resolve the problem, *step two* entails the inmate submitting a written grievance on a designated form to the facility's Grievance Officer within a specific period (usually the grievance must be filed within 60 days after the inmate discovers the problem about which he complains). After investigating, the Grievance Officer forwards his conclusions to the Chief Administrative Officer (CAO). The CAO's decision is furnished to the inmate.

If the inmate still is unsatisfied, *step three* is an appeal in writing to the Director of the IDOC. The inmate submits the Grievance Officer's report and the CAO's decision to the Administrative Review Board (ARB). The ARB examines the documents, determines whether a hearing is needed, may interview the inmate, and may call witnesses. Ultimately, the ARB submits a written report of its findings to the Director of the IDOC who makes the final decision on the grievance. Copies of the ARB's report and the Director's final decision are sent to the inmate.

►     <u>Application to Case at Bar</u>

In the case at bar, Judge Williams' Report delineates Plaintiff Boclair's claims against the six Defendants as well as the steps Boclair took and the grievances he filed regarding those claims. Surviving threshold review under 28 U.S.C. 1915A were Plaintiff's claims that Defendants retaliated against him for filing grievances. The retaliation allegedly came in the form of threats (by Defendants Sadler and Westerman), transfer to a cell with an inmate who later attacked Boclair (by Defendants Monroe, Liefer and Maue), and transfer to a different institution (by Defendant Hulick).

Judge Williams concluded that Plaintiff exhausted his administrative remedies as to the claims against Defendant Tina Beardan Monroe and Darrell Westerman. Neither Defendants nor Plaintiff objected to this conclusion. Judge Williams concluded that Plaintiff *failed* to exhaust his administrative remedies on the claims against Defendants Hulick, Liefer, Maue and Sadler. Plaintiff lodged no specific objection to Judge Williams' conclusion as to Defendant Hulick. Plaintiff objects to the Report's recommendations only as to Defendant Liefer, Maue and Sadler.

    1.    <u>Objection Re: Exhaustion as to Defendant Sadler</u>

Plaintiff devotes one paragraph to challenging the Report's conclusion as to exhaustion of the claims against Defendant Sadler. Specifically, Plaintiff relies on Exhibit 6 to his complaint to argue that he has exhausted his administrative remedies as to Sadler. This argument is a nonstarter.

Exhibit 6 (Doc. 1-1, p. 12) is a grievance filed by Plaintiff on July 18, 2008, alleging that Tina Beardan Monroe selected Plaintiff to move to a cell with a hostile, unstable inmate ("inmate Denton"), that Plaintiff explained his concerns regarding this

move, that he was moved to the cell with Denton anyway, and that Denton assaulted Plaintiff (beating Plaintiff with a radio inside a laundry bag, knocking out Plaintiff's teeth and causing pain to Plaintiff's back and head). The grievance further states regarding the assault by Denton (Doc. 1-1, p. 13): "prison staff have threatened me to my face, and CEO Beardan ha[s] a propensity to see violent acts and orchestrated the assault upon me. I beg you for proper protection from her and other staff and the inmates whom they may directly or indirectly influence."

As was noted in Judge Williams' Report, that grievance was fully exhausted by Plaintiff, and he received a final determination from the ARB on November 24, 2008. The exact nature of Plaintiff's objection to Judge Williams' conclusions as to Defendant Sadler is unclear. The best the Court can glean, Plaintiff asserts that his July 2008 grievance references other *prior-filed grievances* and thereby notified the prison officials that other correctional staff (presumably including Defendant Sadler) had threatened Plaintiff. But the July 2008 grievance focuses entirely on Defendant Tina Beardan Monroe and does not mention Defendant Sadler.[3]

The undersigned District Judge concludes, as did Magistrate Judge Williams, that Plaintiff failed to fully exhaust his administrative remedies as to his

---

[3] Another grievance (dated October 29, 2007) did complain about Defendant Sadler threatening Plaintiff. Plaintiff attempted to file that complaint as an emergency grievance. It was determined that it was not a true emergency and returned to Plaintiff to be submitted through the normal channels. Plaintiff presented it to his counselor but failed to follow any further steps of the process. Plaintiff argued that he took this grievance no further because the counselor told him (a) internal affairs had taken care of the problem, and (b) Plaintiff ought not "write crap" grievances about staff. Judge Williams' Report concluded that neither the counselor nor any other prison official affirmatively prevented Plaintiff from pursuing this grievance, and no prison official advised Plaintiff that he had done all that was necessary to complete the grievance process as to this complaint (Doc. 52, pp. 8-9). Plaintiff did not object to this conclusion.

retaliation claim against Defendant Sadler. Accordingly, the Court overrules that objection to the Report.

## 2. Objection Re: Exhaustion as to Defendants Maue and Liefer

In challenging the portion of the Report which concludes that Plaintiff failed to exhaust administrative remedies on his retaliation claims against Defendants Maue and Liefer, Plaintiff again relies on the July 18, 2008 grievance regarding Tina Beardan Monroe "orchestrating" the transfer of Plaintiff into the cell with (and assault by) inmate Denton. Essentially, Plaintiff maintains that Defendants Maue and Liefer were not mere rank and file officers but instead – as a Major (Maue) and a Lieutenant (Liefer) – they were "administrative personnel" with the power to make administrative decisions such as those involving inmate cell transfers. Additionally, Plaintiff argues that Defendant Liefer was assigned on the protective custody unit "during the attack upon Plaintiff" (Doc. 56, p. 2).

The problem is that the grievance on which Plaintiff relies (the July 18, 2008 grievance) only identified Tina Beardan Monroe; it did not mention Defendants Maue and Liefer; and it did not assign any responsibility for the Denton assault to Defendants Maue and Liefer. Accordingly, prison officials were not placed on notice that Plaintiff was accusing Maue and Liefer of any wrongdoing in connection with this transfer that culminated in the assault. The record simply does not indicate that Plaintiff exhausted any such claim as to Maue or Liefer.

In his objections, Plaintiff also criticizes footnote 8 in the Report and contends that Judge Williams overlooked the true similarity between the issues in this case and those in ***Maddox v. Love,* 655 F.3d 709 (7th Cir. 2011).** In ***Maddox***, the

Seventh Circuit partially reversed a district judge's dismissal of an inmate's § 1983 claims on exhaustion grounds. The Court of Appeals noted that the current Illinois Administrative Code (as of 2003) requires that a grievance contain factual details, "including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." **Maddox, 655 F.3d at 721,** *citing* **20 Ill. Admin. Code 504.810(b).** However, the inmate in **Maddox** (while filing a grievance in 2004) was given a 2001 form by the IDOC.

The Court of Appeals determined that the district court incorrectly found that the plaintiff (Maddox) failed to comply with the directive to furnish details. The Court of Appeals reasoned that Maddox's grievance served its function by providing the prison officials a fair opportunity to address his complaints, especially in light of the fact that the form in use in the prison at that time (the old form) did not ask inmates to list the names of the persons subject to the complaint, it only asked the inmate to briefly summarize the nature of the grievance. **Id., 655 F.3d at 722.** Furthermore, the Court of Appeals noted that (given the particular facts of the grievance in **Maddox**), the prison administrators would be able to tell *just from the nature of the administrative decision in question* (cancelation of religious services) who was responsible for that decision.

Judge Williams' Report included a footnote distinguishing the facts of the instant case from those of **Maddox** (Doc. 52, pp. 10-11, n.8). Footnote 8 is neither factually inaccurate nor legally incorrect. **Maddox** can be differentiated from the instant case in the way Judge Williams pointed out – unlike **Maddox**, nothing in Boclair's grievance alerted prison officials that Maue or Liefer was responsible for the decision to move Plaintiff in with Denton, and the mere nature of Maue and Liefer's jobs did not

indicate that they necessarily or likely would have been involved in the transfer decision which Plaintiff claims Tina Beardan Monroe orchestrated to retaliate against him. So the Court finds no merit in Plaintiff's objections as to the exhaustion analysis regarding Defendants Maue and Liefer.

### C. Conclusion

For all these reasons, the undersigned District Judge **ADOPTS** in its entirety Judge Williams' Report and Recommendation (Doc. 52) and **GRANTS IN PART and DENIES IN PART** Defendants' summary judgment motion (Doc. 44), concluding as follows.

- Plaintiff exhausted his administrative remedies as to Defendants Tina Beardan Monroe and Darrell Westerman. Therefore, Defendants' motion is **denied** as to Tina Beardan Monroe and Darrell Westerman.
- Plaintiff failed to exhaust as to Defendants Donald Hulick, Dan Liefer, Tom Maue and Bradley Sadler. So Defendants' motion is **granted** as to Hulick, Liefer, Maue and Sadler.

If administrative remedies are not properly exhausted prior to filing suit, the district court must dismiss those claims/defendants without prejudice to the inmate initiating another action if appropriate and possible after he exhausts those remedies. ***See, e.g., Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005)**, *citing **Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)**("Dismissal for failure to exhaust is without prejudice ...."); ***Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)**("We

**therefore hold that *all* dismissals under § 1997e(a) should be without prejudice").** Accordingly, all claims against Defendants Hulick, Liefer, Maue and Sadler are hereby **DISMISSED** without prejudice based on Plaintiff's failure to exhaust prior to commencing this suit.

As a consequence of the Court adopting Judge Williams' Report and Recommendation, **the only claims which remain for disposition herein are Plaintiff's retaliation claims against Defendants <u>Tina Beardan Monroe</u> and <u>Darrell Westerman</u>.** A jury trial date has been set before the undersigned District Judge (October 15, 2012), and Magistrate Judge Williams will conduct a final pretrial conference on September 4, 2012 (see Docs. 39, 40).

IT IS SO ORDERED.

DATED March 14, 2012.

<u>s/ Michael J. Reagan</u>
Michael J. Reagan
United States District Judge